IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

| | | |
|---|---|---|
| **LARRY T. WALKER,** | ) | |
| | ) | |
|     **Plaintiff,** | ) | |
| | ) | |
| v. | ) | No. 15-cv-2340-JDT-tmp |
| | ) | |
| **CITY OF MEMPHIS, et al.,** | ) | |
| | ) | |
|     **Defendants.** | ) | |
| | ) | |

_____

**REPORT AND RECOMMENDATION**
_____

On May 20, 2015, plaintiff Larry T. Walker, a resident of Memphis, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 against defendants the City of Memphis ("City"); Shelby County; an unnamed "Memphis City Counselor"; City Mayor A C Wharton; Shelby County Mayor Mark Luttrell; U.S. Congressman Steve Cohen; Memphis Police Department ("MPD") Director Toney Armstrong; Shelby County Sheriff Bill Oldham; unnamed MPD Officers; unnamed deputy jailers; unnamed television stations, radio stations, stores, and restaurants; the Memphis Bar Association; and unnamed "ordinary citizens." On the same day he filed his complaint, Walker filed a motion seeking leave to proceed *in forma pauperis*, which the court granted on May 22, 2015. (ECF No. 5.) This case has been referred to the United States Magistrate Judge for management and for all pretrial

matters for determination and/or report and recommendation as appropriate. For the reasons that follow, it is recommended that this case be dismissed.

## I. PROPOSED FINDINGS OF FACT

While Walker's 68-page, handwritten complaint is difficult to decipher, his allegations appear to revolve around the use of a "Control Monitor" by various unnamed police officers and the use of "Informants" to harass him since 1989. (ECF No. 1, at 5.) Walker alleges that the defendants' actions are retaliation for two previous lawsuits that he filed[1] and because he is African-American. (Id.)

Walker alleges that MPD officers began to harass him after he told two officers to leave his wife alone. (Id. at 9.) The harassment involved the officers sending an "undercover agent or Informer" named Lavada Matthews to befriend him. (Id.) Walker alleges that while detained in November 1989, deputies did not allow him to go to court, but instead placed him in "the hole." (Id. at 11.) Walker also alleges that deputy jailers beat him and broke his neck, back, hip, and ribs, leaving him in "the hole" for over a year without medical attention. (Id.) Walker also alleges that deputy jailers placed an "Informant," another inmate, with him in "the hole." (Id. at 12.) This "Informant"

---

[1]Walker alleges that he previously filed two civil rights suits, one "in 1989 for a beating" and the other "for this control monitor." (ECF No. 1 at 6.)

told Walker not to accept any deal that a "Lieutenant Mark Hopper" offered him. (Id.)

Walker alleges that after being released in 1994, the defendants sent other "Informants," Ms. Samual and Mr. Shun Stacey, to harass him. (Id. at 13-14.) Walker claims that Mr. Stacey planted drugs in Walker's mother's home, which the Drug Enforcement Administration later found. (Id.) Walker reported Mr. Stacey to the police, who did nothing to stop Mr. Stacey from continuously breaking into Walker's house and vandalizing his car from 1997 to 1999. (Id. at 15.) Walker also claims that Ms. Samual befriended him, only to allow Mr. Stacey into her home to sexually assault Walker while he slept. (Id. at 14-15.) Walker reported Ms. Samual to his Primary Care Physician, who then proceeded to give Walker a shot of something that "started breaking out all over [his] body and almost killed [him]." (Id.)

Walker further alleges that in February 1999, police forced their way into his mother's home, without a search warrant, and found a piece of a gun that Walker did not know was there. (Id. at 16.) While being detained, Walker claims that he awoke in the middle of the night to deputy jailers holding him down. (Id.) After being released in 2001, Walker alleges that the "Informants" continued to sexually assault, beat, and rob him. (Id. at 17.) Walker alleges that another "Informant," Ms.

Lawada Vinson, let other "Informants" into her home to sexually assault him while he slept. (Id.)

Walker further alleges that various businesses and restaurants have used the "Control Monitor" to harass him and have laced their food and other products with poison. (Id. at 18.) Walker also claims he can no longer watch television or listen to the radio because they either talk back to him or play previous conversations he has had. (Id.)

Walker believes that the defendants' continued use of the "Control Monitor" to "read the plaintiff's mind," and the use of "Informants" to harass and sexually assault him without being arrested constitutes a "cruel and unusual way of retaliation." (Id.) In eighteen counts filed against the defendants, Walker seeks $50,000,000 in exemplary and compensatory damages from each Defendant, and asks the Court to remove the "Control Monitor." (Id. at 3.)

## II. PROPOSED CONCLUSIONS OF LAW

### A. Screening

The court is required to screen *in forma pauperis* complaints and to dismiss any complaint, or any portion thereof, if the action —

    (i)      is frivolous or malicious;

    (ii)     fails to state a claim on which relief may be granted; or

> (iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2).

In assessing whether the complaint in this case states a claim on which relief may be granted, the court applies the standards under Federal Rule of Civil Procedure 12(b)(6), as stated in Ashcroft v. Iqbal, 556 U.S. 662, 677-79 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007). Hill v. Lappin, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" Williams v. Curtin, 631 F.3d 380, 383 (6th Cir. 2011) (quoting Iqbal, 556 U.S. at 681). "[P]leadings that . . . are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 556 U.S. at 679; see also Twombly, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"*Pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." Williams, 631 F.3d at 383 (internal quotation marks omitted). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989); see also Brown v. Matauszak, 415 F. App'x 608, 613 (6th Cir. 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'") (quoting Clark v. Nat'l Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975)); Payne v. Sec'y of Treas., 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); cf. Pliler v. Ford, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); Young Bok Song v. Gipson, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are

properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

**B.   Complaint is Frivolous**

Under § 1915(e)(2)(B), the court has the discretion to refuse to accept allegations in a complaint that are "clearly baseless," a term encompassing claims that may be described as "fanciful, fantastic, delusional, wholly incredible, or irrational." Bumpas v. Corr. Corp. of America, No. 3:10-1055, 2011 WL 3841674, at *8 (M.D. Tenn. Aug. 30, 2011) (citing Denton v. Hernandez, 504 U.S. 25, 32–33 (1992)). Furthermore, "a district court may, at any time, *sua sponte* dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." Apple v. Glenn, 183 F.3d 477, 479 (6th Cir. 1999).

Walker's complaint presents a rambling narrative of events spanning multiple decades, containing implausible and frivolous allegations. For example, Walker alleges that stores and restaurants are attempting to poison him, that unknown police officers forced a "Control Monitor" on him in order to read his mind, that defendants have paid "Informants" to sexually assault and harass him, and that television and radio stations use the

"Control Monitor" to talk back to him. These allegations fall into the category of wholly incredible and irrational claims that warrant dismissal under both § 1915(e)(2)(B) and Rule 12(b)(1). See Jefferson v. World Bank, No. 15-2176-JDT-dkv, 2015 WL 1565883, at *4 (W.D. Tenn. Apr. 8, 2015) (dismissing *pro se* plaintiff's complaint as factually frivolous under § 1915(e)(2)(B)); Williams v. City of Memphis, No. 14-2767-JDT-tmp, 2015 WL 808456, at *7 (W.D. Tenn. Feb. 25, 2015) (dismissing *pro se* plaintiff's lawsuit as frivolous under Rule 12(b)(1)); Veasley v. Bryant, No. 14-2558-JDT-tmp, 2014 WL 4057146, at *5 (W.D. Tenn. Aug. 15, 2014) (dismissing *pro se* plaintiff's lawsuit as frivolous under Rule 12(b)(1)); Smiley v. Nadean, No. 1:14-cv-87, 2014 WL 546035, at *2 (S.D. Ohio Feb. 10, 2014) (dismissing *pro se* plaintiff's complaint as frivolous under § 1915(e)(2)(B)).

### III. CONCLUSION

For the above reasons, it is recommended that the complaint be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and Federal Rule of Civil Procedure 12(b)(1).

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

May 28, 2015
Date

NOTICE

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. ANY PARTY MAY RESPOND TO ANOTHER PARTY=S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**